IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>APPROXIMATELY $935,754 IN UNITED STATES CURRENCY SEIZED FROM SENECA AVERY MOORE ON MAY 16, 2020 IN MONROE, NORTH CAROLINA. | CIVIL NO. 3:20-cv-44 |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

NOW COMES Plaintiff the United States of America, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and alleges as follows:

### INTRODUCTION AND NATURE OF THE ACTION

1. This is a civil action *in rem* against approximately $935,754.00 in United States currency seized from Seneca Avery Moore ("Moore") on May 16, 2020 in Monroe, NC (the "Currency").

2. Moore is a convicted drug trafficker who, at the time of seizure, was transporting almost a million dollars packaged in (1) a plastic draw-string bag containing large stacks of cash secured with rubber-bands and (2) two large cardboard boxes containing vacuum-sealed bundles of cash each marked with a symbol of the Nine Trey gang. Further, a drug detection dog positively alerted to the odor of narcotics when deployed in an open-air sniff on Moore's vehicle containing the Currency. And a review of Moore's personal and business tax returns demonstrate

1

that a legitimate source of the Currency is, at best, highly improbable.

3. Thus, the Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846

4. Procedures for this action are mandated by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and, to the extent applicable, 21 U.S.C. § 881; 18 U.S.C. §§ 981, 983, and 984; and the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355. These statutes confer original jurisdiction to federal district courts of all civil actions, suits, or proceedings commenced by the United States and any action for the forfeiture of property incurred under any act of Congress.

6. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred within the Western District of North Carolina. Venue is also proper pursuant to 28 U.S.C. § 1395 because the Currency was seized in the Western District of North Carolina.

7. The Currency has been seized and is now within the Western District of North Carolina.

8. Based on the following facts, verified by Federal Bureau of Investigation

("FBI") Special Agent Stuart M. Kelley, this action seeks the forfeiture of all right, title, and interest in the Currency.

## FACTS GIVING RISE TO FORFEITURE

*The traffic stop and seizure of the Currency*

9. At roughly 10:13 pm on May 16, 2020, a Monroe Police Department Sergeant (hereinafter referred to as the "MPD Sergeant), initiated the traffic stop of a white Ford F-150 Truck at 4103 W. Hwy 74, Monroe, NC (the parking lot of a Circle K) as, *inter alia*, the MPD Sergeant was unable to tell if the license plate lights on the truck were working.

10. The MPD Sergeant approached the truck and advised the driver, Seneca Moore, that he had stopped the truck due to his license plate lights, and asked to see his driver's license and registration.

11. Moore took longer than usual to locate his license and the MPD Sergeant had to assist him.

12. When approaching the vehicle, a second MPD officer (hereinafter referred to as the "MPD Officer") noticed two large cardboard boxes in the back seat of the truck.

13. As the MPD Sergeant returned to the patrol car with Moore's driver's license, the MPD Officer advised Moore that law enforcement would be conducting an open air K-9 sniff of the vehicle. The MPD Officer requested that Moore step out of the vehicle, and Moore consented to a pat down for weapons on his person.

14. A MPD K9 officer (hereinafter referred to as the "K9 Officer") then

deployed K9 Zorro, a properly trained and certified drug detection canine, in an open air sniff of Moore's vehicle.

15. After circling the vehicle twice with K9 Zorro, the K9 Officer indicated that Zorro positively alerted to the presence of narcotics in/on/from the vehicle, specifically showing the most interest in the door seam to the right of the driver's door handle.

16. Based on K9 Zorro's alert, the MPD Sergeant and MPD Officer searched the vehicle. The search of Moore's vehicle revealed:

- Two cardboard boxes in the rear seat behind the driver's seat containing numerous vacuum-sealed bags of large amounts of U.S. currency marked with a red star drawn with a red marker; and

- A plastic draw-string bag located in the center console also containing a large amount of U.S. currency in large stacks secured with rubber-bands.

17. The Currency's packaging is indicative of cash involved in drug trafficking. Vacuum sealing is commonly used in drug trafficking as an attempted means to conceal the odor of illegal drugs. Further, the red stars drawn on the Currency's packaging are known to be a symbol of the Nine Trey gang (a set of the United Blood Nation gang), an organization known to be involved in drug trafficking.

18. Photographs of the Currency and its packaging are shown below:





19. The seized currency was later determined to total $935,754.00.[1] No other contraband was located during the search.

20. During the traffic stop, the MPD Sergeant asked Moore where the Currency came from. Moore responded that he owned a trucking company and houses, and that he banked with Wells Fargo Bank. Moore did not provide law enforcement with any documentation demonstrating the source of the Currency or that any such source was legitimate.

21. Due to the large amount of currency, the MPD Officer called an FBI

---

[1] A counterfeit $10 bill and $20 bill were discovered during the processing and deposit of the Currency and removed.

Task Force Officer (hereinafter referred to as the ("FBI TFO"), who arrived at the scene and advised seizure of the Currency.

22.     The Currency was seized, and then later processed in a Wells Fargo Branch location and converted into a cashier's check payable to the United States Marshals Service.

23.     At the conclusion of the traffic stop, the MPD Sergeant provided a written warning to Moore for a license plate frame violation he noticed during the stop and advised Moore that he was free to leave.

24.     Thereafter, on June 29, 2020, Moore appeared at the Charlotte FBI office and signed a receipt for property form. Moore did not provide any further information regarding the source of the Currency at the time.

***Moore's finances do not support a legitimate source of the Currency***

25.     Based on tax returns from 2017 to 2019 voluntarily produced to the Government, Moore appears to own two businesses: (1) Kiss Express LLC, a trucking company (and the company to which Moore's truck involved in the traffic stop was registered) and (2) Moore Rentals LLC, a residential rental company.

26.     A review of the tax returns of Moore and/or these businesses leads to an important conclusion: assuming Moore's tax returns accurately reflect his income and expenses—*i.e.* he has not separately committed tax fraud by failing to disclose a significant amount of cash income—then it is highly implausible that Moore could have legitimately accumulated $935,754 in free cash to be driving around with on May 16, 2020.

27. Rather, the Government's analysis (as detailed in part below) indicates that, with each of his businesses, Moore's claimed expenses (not including depreciation, a tax deduction not actually paid out) either roughly equaled or exceeded the total income for the business in any given year—making the accumulation the Currency by legitimate means improbable.

28. First, Moore Rentals LLC claimed in taxable income (*i.e.* after accounting for, *inter alia*, expenses and deductions) **negative** $438.00 in 2017, $0.00 in 2018, and $35.00 in 2019.

29. Notably, these figures were reached with very little depreciation deductions—$1,759, $6,231, and $8,934 respectively in 2017 to 2019—demonstrating that the claimed offsets against the business's gross receipts or sales were almost entirely expenses that would have been actually paid out, including (as Moore listed) repairs and maintenance, supplies, utilities, automobile and truck expenses, insurance, etc… It is axiomatic that revenue received and then paid out to third-parties to purchase goods such as supplies or services such as repairs cannot then be used to stockpile cash reserves.

30. Next, the tax information Moore submitted as to Kiss Express LLC for the same years likewise shows this business was unlikely to have legitimately produced the $935,754 in free cash. Specifically, Kiss Express LLC:

    a. Had a total profit/loss of <u>negative $235</u> in 2017, with $626,615 in gross receipts/sales compared to, *inter alia*, $423,116 in car and truck expenses, $97,000 paid in insurance, and $94,000 paid to independent contractors ($626,850 total claimed in expenses);

    b. Had a total profit/loss of <u>negative $25,284</u> in 2018, with $772,687 in

gross receipts/sales compared to, *inter alia*, $459,896 in car and truck expenses, $140,004 paid in insurance, and $171,615 paid to independent contractors ($797,971 total claimed in expenses);

c. Had a total profit/loss of <u>negative $28,064</u> in 2019, with $382,449 in gross receipts/sales compared to, *inter alia*, $367,200 in car and truck expenses, $28,045 paid in supplies, and $171,615 paid to independent contractors ($410,513 total claimed in expenses);[2]

31. Moore himself claimed $43,385 in wages in 2019, with none claimed in 2017 or 2018.

32. Thus, assuming the truthfulness of Moore's tax returns and with no information known to the Government evidencing that Moore's businesses experienced a sea change in profitability in the first half of 2020 as compared to the previous three years, the only reasonable conclusion that can be drawn is that the Currency was not derived from a legitimate source.

*Moore's criminal history*

33. Moore has an extensive criminal history, which also includes arrests on a variety of charges not listed herein.

34. Moore was convicted of possession of marijuana in 1999.

35. Moore was convicted of resisting arrest/fleeing arrest in 2005.

36. Moore pleaded guilty in 2007 to a violation of 21 U.S.C. § 846, conspiracy to possess with intent to distribute 50 grams or more of cocaine base, receiving a sentence of 90 months of incarceration and five years of supervised release. *See* D.S.C. Case No. 4:06-cr-01237-RBH.

---

[2] Oddly, Moore did not claim any insurance expense or wages/independent contractor payments in 2019 for his trucking business as he did in 2017 and 2018.

37. Moore has a record of returning to criminal conduct—including drug distribution—despite his prior federal drug conspiracy conviction and despite supervision related to the same from the federal court system.

38. In 2007, Moore's federal bond was revoked for new criminal conduct where he was arrested for charges including Assault with Intent to Kill while on bond for the pending drug prosecution.

39. Further, after serving time in the Bureau of Prisons and while on federal supervised release, in 2014, Moore was convicted of violating his supervised release for (1) the new criminal conduct of conspiracy to possess with intent to distribute marijuana, (2) leaving the District of South Carolina without permission, and (3) association with a convicted felon. *See* D.S.C. Case No. 4:06-cr-01237-RBH, Docs. 142, 169, 170. According to the SRV Petition, during a traffic stop in Orange County, Texas, Moore (who was travelling with another individual) gave consent for law enforcement to search his pickup truck, whereupon $30,870 was found in a toolbox. Moore admitted to law enforcement that he was en route from South Carolina to Houston to purchase an unknown amount of marijuana at $400.00 per pound from Lawrence Flores, an individual Moore met in prison. *Id.*

### FIRST CLAIM FOR RELIEF – THE $935,754.00 IN CURRENCY
### (21 U.S.C. § 881(a)(6))

40. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 39 above as if fully set forth herein.

41. The $935,754.00 in Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished

9

by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

42. Upon information and belief, the following persons and/or entities may claim an interest in the Currency seized on May 20, 2020:

- Seneca Avery Moore;
- Kiss Express, LLC;
- Moore Rentals LLC; and
- Courtesy copy to Geoffrey G. Nathan, Attorney at Law.

## CONCLUSION

43. By virtue of the foregoing and pursuant to 18 U.S.C. § 981(f), all right, title, and interest in the Currency vested in the United States at the time of the commission of the unlawful act giving rise to forfeiture and has become and is forfeitable to the United States.

WHEREFORE, the United States of America respectfully prays the Court that:

1. A warrant for the arrest of the Currency be issued;

2. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

3. Judgment be entered declaring the Currency to be condemned and forfeited to the United States of America for disposition according to law; and

4. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Currency as required by 28 U.S.C. § 1921.

Respectfully submitted this 27th day of January, 2021.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

/s/ Seth Johnson
J. Seth Johnson
NC Bar No. 53217
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 338-3159
Email: seth.johnson@usdoj.gov

# VERIFICATION

I declare under penalty of perjury that the factual information contained in the foregoing Complaint is true and correct according to the best of my knowledge, information, and belief.

Executed on the 26th day of January, 2021.

_____
Stuart M. Kelley, Special Agent
Federal Bureau of Investigation